You may be seated. Our first case in Des Moines 410062 K.T. Winneberg v. The Calhoun County Board of Review. For the appellate Mr. Rehausen, for the appellee Mr. Scherer, you may proceed. Your Honor, Mr. Scherer pleads the court. I'm Richard Rehausen. I represent K.T. Winneberg, developer of real estate operating in Calhoun County. My goal here today is to respectfully request that this court direct the supervisor of assessments of Calhoun County to implement the clear intention of the legislature of the state of Illinois to both protect developers and to encourage real estate development in both Calhoun County and Illinois. Well, does it depend upon whether this is a sale or not? I'm sorry, Your Honor. Does it depend upon whether this was a sale or not? Well, I believe Your Honor has correctly identified the exact issue that we have before us. I don't believe that there's any question but that everyone agrees that the intention of the state is to encourage real estate development. What the question here is, is essentially whether or not a developer's exemption is limited to one developer or whether if he turns his operation over to a second developer, either through sale or through foreclosure, whether that developer's exemption continues to pass on to the new developer. And of course that is exactly what we argue should happen and in fact has happened in the past in Calhoun County. If the court reviews the record that was presented at stipulations, Winneberg subdivision was originally built by a man named Morrissey who operated a company called Golden Eagle Development. And when he planted out this acreage into Winneberg subdivision, he initially did it in three different phases, phase one, two, and three. Subsequently it was re-subdivided into, I believe, Fox Run, Deer Trail, and a couple other ones. At the time that was planted, the supervisor of assessments, in my opinion, correctly followed the law and did not change the assessments of these lands from farm ground to anything else. She left them as farm ground and continued that way. And the development started. Now at some point there was a bulk transfer of a portion of the lots of the Winneberg subdivision to a second developer by the name of Angelus Development. These are all development corporations. And that transfer in bulk did not result in any change of assessment. Supervisor of assessments continued to grant the successor development, or successor developer, the developer's exemption and it stayed as farm ground. And that developer worked on developing the lots in Winneberg. Subsequently, Angelus Development transferred in bulk their lots to a third developer by the name of Nelko, run by a man named Dan Nelson. Again, that transfer of lots in bulk from one developer to another did not change the assessment. Supervisor of assessments of Calhoun County continued to grant the developer's exemption to the successor developer. A third time there was a transfer of bulk lots. This time from GED Development to Nelko, directly to Nelko. Again, the bulk transfer was not treated as an initial sale of the lots and the developer's exemption continued. So clearly there's a history here of the supervisor of assessments doing exactly what I believe the legislature intended, which was to protect developers who haven't sold these lots out individually to people. Because they still have this capitalized expense that hasn't been passed on that they're carrying. Now when one developer initially may lay out part of the sidewalk or part of the streets, and I understand the esteemed council's argument that they're the only ones then who should be a developer, but the truth of the matter is that those expenses are passed on in the bulk transfer to whoever buys them. And they have the continued obligation to continue to maintain the roads and continue to maintain the sidewalks, keep the trees cut, ponds cleared, until these lots are sold. So to say that only the initial developer should receive that exemption, in my opinion, is a misreading of the legislature. If we look at the language that they've talked about, it seems to clearly want to encourage real estate development in Illinois. And they do that by not having the taxes go up until the lots are individually sold to people who are going to build houses on them, for instance. Now the distinction between all these and the reason we're here is that when my client essentially purchased the bulk of the lots, essentially all of them, when his purchase came in it was treated differently than all the other bulk transfers. And they reassessed all the lots from farmland into individual lots with the attendant increase in the taxes that he would have to pay. And again, in my opinion, this clearly defeats the legislative intent to encourage development. If the successor developer is going to have all the taxes increase on all the lots before he sells them, there's no encouragement in a case like that for anyone to ever become a successor developer. If a bank or mortgage company can lend their money to a developer to make his development, only at the risk of if they take it back to a foreclosure of having to pay all the taxes, that's going to chill lending money to developers. Again, both those things seem to be contradictory with what we want to accomplish in the state of Illinois. I understand you don't think what happened in this case should have happened. Correct. You've traced a history for us. Well, what was it that prompted Calhoun County to say, aha, this is different? You don't like their reason, but what's the reason? To be honest, I never saw a good reason and I never heard one. I didn't ask for a good one, what's their reason? I don't remember the supervisor of assessments ever saying why she treated this one differently. She simply did. We raised all these arguments before the Board of Review. She simply said, well, this is an initial sale. I guess the only distinction I can see is that she treated the fact that it was a mortgage foreclosure, that essentially there was a mortgage foreclosed and my client, who was the mortgage that is somehow different than a sale directly from GED to Anschloss or GED to Nelco or whatever. I mean, that's the only distinction that I was ever aware of through the history of this case. Mr. Ringhausen, what about the temporary act that took effect on August 14, 2009, which specifically exempted mortgage foreclosure sales? Right. And to be honest, that one popped up during the course of our litigation and kind of made us all scratch our heads, to be perfectly honest. My position on it was that the mere fact that they specifically said that a mortgage foreclosure is listed in the column with initial sales means that it's not an initial sale or there wouldn't be any reason to separately describe it. And I understand my opponent's argument that it should be read differently, but I think that it clearly seems to be consistent with the way that the law has been applied in the past. And when I look at it, for the life of me, I can't see any distinction between buying or buying these lots in bulk as a developer at a sheriff's sale as opposed to buying the lots in bulk from Nelco or from Anschloss or from GED. I mean, as far as the successor developer is concerned, he's in exactly the same position as those other successor developers were. He still has to maintain the roads. He still has to cut the trees. He still has to keep the sidewalks clear. He still has to clear the snow in the winter until his lots are sold. I mean, he has exactly the same burden that all these original developers had. And the only distinction is that instead of a warranty deed from GED to him, it was a sheriff's deed from Nelco to the mortgage company to him. I mean, it came in a roundabout way, but he has exactly the same interest in it. Well, is there a greater risk for the future that they won't be developed if they end up going... well, in your instance, somebody tried to develop it and then they sold them for a legitimate business purpose. Yes, sir. Well, one would assume. And then that happens several times, and then you get to the point where this isn't working for whatever reason, and there's a mortgage foreclosure. I believe that's exactly what we're looking at, that there is indeed a risk to someone who takes it on here. I'm talking about the risk of the tax rules. I mean, when does the county say, or when does the law say, how many transfers can there be? And at what point should these be reassessed at what they were originally? And a trigger for that might be the developer last in line can't make a go of it, i.e., the mortgage foreclosure. Yeah, well, and I certainly understand that. I disagree with that for the simple reason that any one of these transfers may have been caused by the fact that they were having trouble when transferring from one to another. In this particular case, Mr. Nelson, of course, did allow his property to go back to there. But if we apply what the county is wanting to do, essentially, we're taking this new developer, who is taking on a risk. There's nothing that requires him to come in and take over something to try to have houses grow in Cowney County. I wants to make a profit. I'm going to go with deny that. But he is running a risk. And if he has to pay the higher taxes, he has the same risk that NELCO had. Plus, he's got an additional burden. It's going to be even more difficult for the next person that comes in if the taxes go up on it. Well, except you told me that the improvements, the expenses for those improvements get passed along. Yes, sir. Why doesn't the risk of or the likelihood that in Calhoun County, you're going to have, there's a reverter to the original tax situation. Why isn't that taken into account in the sale price? If it's a sale as opposed to... Well, because from the point of view of the buyer here, what he's basing his analysis on is the past history. I understand, but if this case were to stand, then what would the new buyer do? I'm going to pay less for it because I'm going to have to pay higher taxes. I believe that may be the case too. Or other, that the bank who lends the money on it is going to have to absorb the shock of selling it for less. I mean, they're not going to get back their investment. I mean, that loss is always going to fall on someone. Right. That's free market. Yes, sir. Free market aside, the legislative intent is to encourage development. I don't believe that there's any way that we can make an argument that says raising the taxes for a new developer encourages development. It just doesn't logically flow. But on a public policy basis, if this were to stay, it could be taken into account in the actuaries, getting involved in deciding what the lots are going to have to be sold for to bear the expense of the taxes that have been paid. I mean. And that is true, but that argument would apply equally to the initial development. We could say that initially it's got to be. Sure. But, you know, for good or bad, the legislature has decided that one of the benefits we're going to give a developer is to have those lower taxes. From the county's point of view, the tax amount that's collected is the same. The taxing bodies don't levy percentages of the assessment. They levy firm tax dollars. For instance, if I have a school district, they're going to submit a tax levy for $150,000, let's say. And that then goes to the supervisor of assessments who spreads it out. From their point of view, they would receive the same funds either way, whether it comes from my developer, whether the burden is spread out over all the taxpayers of the county. So from the county's point of view, it really doesn't affect them directly, other than that the supervisor of assessments, of course, wants to do her job correctly. But I argue that doing her job correctly means that we've made a decision through our elected officials to spread that risk of development out among all the citizens of the county and that essentially they get a tax break at some point when these lots are sold and houses are built and that the assessment values go up and then the tax value is spread amongst the new development. But that shouldn't happen until those lots are actually sold individually and built upon. Question from the audience. Mr. Reganhaus, I want to ask you another question about that temporary relief act. It went into effect in August of 2009 and it sunsets in January of 2011 or 2012, I can't remember which date. Yes, Your Honor. So doesn't that lead you to think that after that date when the legislation sunsets, this mortgage foreclosure exemption is going to be gone again? I don't believe so. Why would they have put it in there if it was already covered? I guess that's my question. Well, I don't believe that it was covered. I think that first off the way you have to look at those is the fact that under the old statute we had exclusionary language and under the new one we had inclusionary language. And the fact that the new statute changes the method of development. I don't believe the fact that the old one sunsets means that the new one doesn't continue to provide exemption for real estate developers. I think that they split it on the new one for the simple reason that they were giving something as opposed to excluding something. I don't know if that makes a ton of sense, but that's the only way I can seem to make sense of it myself. And I grant that even at the trial level my argument was that that was more of a stretch for my client to argue. Thank you. We have no further questions, but you'll have time for a rebuttal. Thank you, Your Honor. Was the supervisor of assessments correct in treating this? I understand, I don't know what you necessarily think about the history, but would it be, was the supervisor correct in treating this one differently than prior transfers of this same property for the same purpose development? I believe so, Your Honor. The distinction to be made is that all of the other bulk transfers, my understanding of the transaction is that they were all sold in chunks. This mortgage foreclosure sale, however, the record's not entirely clear how that sale actually took place, whether it was a single bid for everything or whether it was individual bids for each parcel. The record's unclear as to whether someone could have shown up at this public sale and bid on individual lots. There was a stipulation of facts presented to the trial court. Paragraph 48 simply said that on April 2nd, 2008, the above described tracts were sold in bulk foreclosure sale to complainant by sheriff's team. So I think that's the distinction to be made, and that's the distinction that was made at the trial level by the trial judge, that anybody could have shown up at this sheriff's sale and bid on it. It wasn't just specifically an arm's length transaction between developers. Nobody did. Right, nobody did. Because it was the bulk sale to the individual or the entity. That's the way it was. But somebody could have. Correct, that's, yes. And if somebody had done that and bought one lot, one parcel, one whatever, what would that mean? And all the rest of them went in bulk. Right, that would have been an initial sale. Each individual lot would have been an initial sale. It would have been an initial sale for them. Correct, it would have been an initial sale to change the assessment for them. But because of your argument, then that would also change the assessment for the 99% rest of them that go in bulk. Yes. Okay, so it's the potential for purchase individually that, it's like a triggering event. I believe that's what the rationale was of the supervisor assessment. So obviously the record isn't clear on that, but I think that was the logic that was applied. Mr. Sheriff, can I ask you one more question on this topic? Sure. I thought, now maybe I'm wrong, but I thought when I looked at the statute, the sale of one lot triggered a rise in assessment for that to a residential level, but the remaining lots that were agricultural before continued to be taxed at that level. Is that right? Yes, if it's the developer selling an individual lot. If it's the developer who's got the benefit of the preferential tax treatment selling an individual lot, breaking it away. Here, the developer sold everything at the mortgage foreclosure sale. So whoever bought it, whether it was one person or a thousand people showing up at the sheriff's sale and bidding successfully on the properties, that resulted in the change in this case. So in simplest terms, a sheriff's sale via mortgage foreclosure is completely different than from the statute's the bulk transfer of all the property from one developer to another developer, because the second developer is better capable of developing it, whatever the reason is. I believe that that's what the Calhoun County taxing officials felt. I'm not sure that that's accurate. I think initial sale is initial sale. I think that some of these initial bulk transfers could have been treated as an initial transfer. But I think you mentioned the idea about putting tax rolls encouraging the development. I think that's why they weren't. I would speculate that that's why they weren't. They wanted to see these properties further developed. They didn't want to burden those developers with the additional tax burdens of having inherited these projects that apparently fallen on difficult financial times. Well, do we want to leave it to the discretion of the supervisor of assessments to decide what an initial sale is? I mean, if you're right, then the law apparently doesn't want them to bide their time and wait until it finally gets developed. But from the developer's point of view, it's like, wait a minute, you know, entrepreneurial spirit, let's, you know, we may have to go through two or three developers before we get the thing done. Right. So which is it? Well, the supervisor of assessments in each county is granted a great deal of discretion in how to handle these sorts of things. For example, a manufactured home that maybe the law says it should be considered personal property and the owner pay a privileged tax. In some counties, I know of supervisors of assessments who approach the owners of a manufactured home and say, hey, you know what, with all these exemptions, with homestead exemption and owner-occupied exemptions, with all these different exemptions, you could actually pay less if your manufactured home was classified as real estate as opposed to personal property. Would you like me to do that? So those sort of things do happen. The supervisor of assessments has a great deal of discretion on what sort of, how to approach the different taxing issues. That's why they're there. They're there to make these judgment calls. And if they make a judgment call that somebody doesn't agree with, that's why we have the statutory procedure. The property tax code provides a comprehensive scheme for the assessment of real estate, the taxation of real estate. It outlines who has authority, when they have the authority, and what authority they have. And it's related to the taxing cycle. It starts out with the supervisor of assessments meeting with the township assessors prior to December 31st of the coming tax year. The county clerk delivers the books to the supervisor of assessments, who turns them over to the township assessors. The township assessors go do their initial assessments, give them back to the supervisor of assessments. The supervisor of assessments can revise and correct the assessments as he deems appropriate or she deems appropriate. Those books are then given to the board of review for correction or revision. And it's just part of the tax cycle that if the taxpayer has a problem with what's been going on, then they can go to the board of review. While they're while they're complaining to the board review, if they're dissatisfied with what happens to the board of review, then they come to a fork in the road. They either go to the circuit court on a tax objection complaint, or they go to the property tax appeal board concerning the valuation and assessment of their property. And in this case, that's what we submit should have happened. That once the board of review addressed the concerns raised by Winneburg, that the next step was either to go to the property tax appeal board and go to the circuit court on a tax objection complaint. That didn't happen here. Okay, and I want to I want you to address those issues, but I want to ask you one quick question before we get to the jurisdictional issue. Do you agree that if this foreclosure sale had occurred on August 15, 2009, the exemption would apply to this developer that bought it at the foreclosure sale? You say that again, I'm not sure I'm tracked. Okay, if the foreclosure sale occurred August 15, the day after the temporary legislation took effect, the developer who bought at the foreclosure sale, K.T. Winneburg, would have been entitled to an exemption? If this temporary statute applied, they would have been entitled to continuation of the preferential tax treatment, yes. Okay, and then that's set to expire at a certain date? I believe it's the end of next year. So like 2011, first of the year, okay. All right, Mr. Scherer, are you going to address the jurisdictional issue? Yes, please. Okay. As I was saying, once you get down to board review, there's a fork in the road. You either go to the property tax appeal board or the circuit court, and there's decades of precedent that makes it clear that this statutory scheme provides a procedure that's very broad in application, and it preempts suits for declaratory relief or injunctive relief unless there's some very well-defined, narrow exceptions to this process. Our contention is that the circuit court was without jurisdiction because the procedure for administrative review of these sorts of decisions was not strictly followed. Winneburg has conceded in its brief that they've never maintained that this was a tax objection proceeding, so the only other alternative is, well, what's the other motive reviews that are available? It's either going through the property tax appeal board or that there's an exception applicable. They've not argued that there's an applicable exception. They're saying that their argument, I believe, is that because the language in section 16-20 of the property tax code says that a party need not appear before the property tax appeal board before seeking relief in the court, their argument, I believe, from reading the reply brief is that this creates some different motive review that's been previously unrecognized under Illinois law. What that provision means is that it just describes what I described before, the fork in the road approach, that you can either go to the property tax appeal board or you can file a tax objection complaint. What that language in section 16-20 means is that you're not bound to go to the property tax appeal board if you have an assessment issue. You may go to the circuit court on a tax objection complaint, and those are the two avenues for review of these things. They were not pursued, and therefore, we submit that the circuit court was without jurisdiction. Winneberg's claims relate to increased assessments, which are clearly within the scope of the property tax code's procedure for review of these things. The statutory procedure is very broad, and Winneberg failed to avail itself of that procedure. Instead of filing the appeal with the property tax appeal board, it just went straight to the circuit court trying to seek review of the board of review's decisions and the supervisor of assessments' decisions. But the trial court here wasn't asked to review a final administrative decision. There was no record of proceedings before any of these, either of these parties. The parties, the state's attorney and Winneberg stipulated to a record, and the scope of administrative review under section 3-110, it specifically says that no new or additional evidence shall be heard by the court. But yet they stipulated to a record. They didn't have a record from the board of review. They didn't have a record from the supervisor of assessments, and that's totally common. The procedure set up by the property tax code says that if you go to the circuit court following a hearing by the board of review, the circuit court conducts a de novo review of everything. If you go to the property tax appeal board, the property tax appeal board hears a de novo. So whatever record is made before the board of review is irrelevant. The board of review proceedings throughout the state are typically reviewed as a hurdle that each taxpayer must simply clear in order to pave the way for their right to file with either the PTAP or the circuit court. In some counties, it's either a dog and pony show where they just throw in some token evidence, not expecting the board of review to do anything, or if the supervisor of assessments has some sort of relationship or the people simply ask, they may just stipulate, yeah, you appeared. You don't have to show up. If there's attorneys involved, I've seen that happen many times where they just say, we will stipulate that you appeared and that there's no change in assessment so that you can preserve your right to go to the property tax appeal. I'm a little confused. Yes. Because I thought you said the statute provides that when you go to the circuit court, no new evidence will be introduced. But then you said the circuit court's hearing a de novo, so whatever happened at the board of review doesn't matter. So did I miss something? I'm sorry. I must not have been clear. On administrative review at the circuit court, there is no new evidence that's heard. And that's when you're taking administrative view of the PTAP decision, isn't it? Correct. Okay. Or in this case where there was administrative review pursued, it said that the administrative review law provides that there's going to be no new evidence, but yet there was stipulations and that's how the record in this case was created. It wasn't created below by the supervisor of assessments or by the board of review. But administrative review, if we're talking about under the administrative code, is that even available when it comes to a board of review decision and proceeding that way? No. Under the that I outlined in my brief, one of them is following a decision from the property tax appeal board. In this case, we didn't have a decision from the property tax appeal board. So administrative review, the strict procedures for administrative review of these sorts of decisions were not followed. And that implicates the doctrine of exhaustion of remedies. It also has a related issue with the voluntary payment doctrine. It's established that a taxpayer may not recover taxes that are voluntarily paid even if the taxes imposed or assessed are illegal unless the statute specifically provides for it. The property tax code provides for that remedy that you can recover despite the voluntary payment doctrine. You can recover taxes that are paid because the property tax code provides for it. Wittenberg has raised the issue about primary jurisdiction. That doesn't apply here. The primary jurisdiction concept applies only where a court has either original jurisdiction or concurrent jurisdiction. It involves a question of timing, not judicial competence to hear a case. Here, the court wasn't competent to hear the case. If it is an issue of timing, it's that it was filed prematurely, filed prior to a hearing by the property tax appeal board. Mr. Schur, could you tell us what they needed to do to be properly before the circuit court? To be properly before the circuit court, they would have had to have either filed with the PTAB or filed with the PTAB. If they didn't file an appeal with the PTAB, the other option is to file a tax objection complaint in which they list their concerns, they identify the defendant as the county collector, not the board of review, not the supervisor of assessments, the county collector, and the court conducts a de novo review of whatever issues they have with the taxes. The circuit court could have done that in this case had it been presented to the circuit court in that posture. Don't they have to allege that they paid all the taxes that were due? They have to allege that they paid the taxes that were due. That was that allegation made in their paperwork? I believe it was. I believe they made that allegation. Okay, so you think that's in their complaint? Your Honor, I correct myself. I do not believe it is in their complaint. But Wittenberg, Your Honor, on page two of its reply brief confirmed that it's never claimed that it's proceeding as a tax objection. Yet Wittenberg asked this court to disregard the scheme that's been set up by the Department of Tax Code and decades of precedent and create some new form of review for assessment decisions. Wittenberg didn't do the things that the law recognizes that they're allowed to do to review assessment decisions. It's not administrative review without strictly complying with the procedure for review of assessment decisions. Therefore, we maintain that the circuit court lacked subject matter jurisdiction. I'm about out of time. I'd be happy to answer any other questions. We have no other questions. Thank you very much. Your Honor, the first thing I would like to address just was a line that was touched on or asked about the sale of individual lots prior to this transfer in bulk to the through the Sheriff's Department. I believe that the evidence was that the previous owners or developers had indeed sold individual lots, that those lots were individually assessed, and that then the remaining lots were what were transferred in bulk. And again, that was exactly the situation we had here. And I agree that in the case of the Sheriff's sale that it was a single deed and that the evidence references that. So that it was not that my client picked and chose individual lots. Everything that was he acquired was transferred him in by means of a single Sheriff's deed. How do you respond to the jurisdictional issue? Well, Your Honor, I believe that as we've laid out in our brief that essentially the issue before everyone was this single question of law. Our position was that the one method that counsel really didn't touch on a lot was that there are essentially two different ways you can get to the circuit court. One is through that tax objection procedure, which we've not claimed that we did, but the other is through administrative review. That you can go to the Board of Review, appeal it to the Property Tax Appeal Board, appeal it to the circuit court, and then ultimately appeal it here, which is what we did. Now of course in this case we did not go to the Property Tax Appeal Board. And what we've argued in our brief, which I believe is accurate, is that essentially the circuit court clearly has subject matter jurisdiction to hear these types of cases. The question is whether or not we went through every single step, which we did not go in front of the Property Tax Appeal Board, but we argue that that issue was waived by the county. Can't waive jurisdiction? I believe that you cannot waive subject matter jurisdiction, but I believe you can waive the primary jurisdiction issue, which is what we stated in here. However, we also argue that we disagree with counsel's interpretation of 35 ILCS 200-1620, which says that you do not have to go to the Board of Review for seeking relief in the case. It's a broadly worded statute that says that it doesn't say exactly that you have to take it and inform the Tax Appeal Board. We would argue that if there's ambiguity or vagueness there, it has to be resolved in favor of the taxpayer. Doesn't Madison 2, the Supreme Court case of Madison 2, lay out exactly what the jurisdiction is and say these two procedures are mutually exclusive, either go through the PTAB or you file your tax objection complaint and go to the Supreme Court? Well, I believe that Madison is distinguishable because Madison deals with the question of valuation and that it deals with issues of valuation, and that makes more sense to me in the sense that when you're talking about what the values are, here you're talking about more of a factual issue where a Property Tax Appeal Board, what they do would have more value in terms of deciding what values are. I mean, it's not a legal question as to what the value of something is, but the method of assessment is something different. And I believe that Madison specifically states that where valuation is an issue, as the case here, those options are mutually exclusive. And this wasn't an issue of question of valuation, this was a question of how we apply the law. And because all the parties acknowledged that essentially we had a legal issue that needed to be decided, I believe, of course I'm speaking for another attorney, but I believe that Mr. Burch's position is the same, that we wanted to essentially bring it to the courts and that whatever decision was made in the Circuit Court, it was intended that either side was going to appeal it here, which is why we're here. I look at the clients that come into my office on a daily basis that have issues to be brought to the courts and let the judges decide, but quite frankly judicial time is a very valuable thing. Is it possible that the court could take the position that it needs to be sent back and that essentially the next tax year we go in front of the Board of Review again, then in front of the Property Tax Appeal Board, then come back and then come here? I mean, to me the best use of time in a case where if it can be resolved from the taxpayer's side, it should be and in this case would make the best use of judicial time. Thank you, Your Honor.